Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00068-CV

**IN THE INTEREST OF J.T.**, A.T., and D.T., Children

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 06-08-18021-CV
Honorable Camile Glasscock Dubose, Judge Presiding

Opinion by:  Steven C. Hilbig, Justice

Sitting:  Karen Angelini, Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  June 10, 2009

AFFIRMED

The trial court terminated the parental rights of Devin and Melissa T. They each filed a statement of appellate points, which the trial court found to be frivolous. Devin and Melissa appeal, contending their affidavits of relinquishment were not voluntarily executed. We affirm.

## BACKGROUND

The Texas Department of Family and Protective Services filed suit in August 2006, seeking to terminate Devin and Melissa's parental rights to their three children, J.T., A.T. and D.T. The final hearing on the case began December 19, 2007. At the end of the second day of testimony, Devin's and Melissa's attorneys conferred with them about voluntarily relinquishing their parental rights.

They continued to confer the following morning, and by midday, each had executed an irrevocable affidavit of relinquishment to their three children. Based on the affidavits, the trial court ordered Devin and Melissa's parental rights terminated.

Devin and Melissa filed motions for new trial and statements of appellate points, contending in part that their affidavits were not signed voluntarily, free of duress, and without coercion. After a hearing, the trial court denied the motions for new trial and found Devin's and Melissa's appeals were frivolous. The court made express findings that clear and convincing evidence exists to support the grounds of termination and that termination is in the children's best interests. The court further found Devin and Melissa each executed an unrevoked or irrevocable affidavit of relinquishment of parental rights and that there was no evidence of fraud, undue influence, or duress. Lastly, the court found "that based upon the testimony, demeanor of Respondent[s], and the circumstances surrounding the execution of the document of relinquishment, that the Respondent[s] understood the document and the effect of its execution." Devin and Melissa appeal the termination decree and the order finding their appeals frivolous.

### APPLICABLE LAW AND STANDARD OF REVIEW

A trial court may order the termination of a parent-child relationship if the court finds by clear and convincing evidence that the parent has voluntarily executed an irrevocable affidavit of relinquishment of parental rights and the termination is in the best interest of the child. *In re R.B.*, 225 S.W.3d 798, 803-04 (Tex. App.—Fort Worth 2007, no pet.); *Neal v. Texas Dep't of Human Servs.,* 814 S.W.2d 216, 218-19 (Tex. App.—San Antonio 1991, writ denied); *see* TEX. FAM. CODE ANN. § 161.001(1)(K), (2) (Vernon 2009). When appeal is sought from an order terminating the parent-child relationship pursuant to chapter 263, subchapter E, of the Texas Family Code, the trial

court must determine whether "the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code." TEX. FAM. CODE ANN. § 263.405(d) (Vernon 2009). An appeal is frivolous when it lacks an arguable basis in either law or fact. *De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex. App.—San Antonio 1998, no pet.). In deciding whether an appeal is frivolous, the trial court "may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002). When the voluntariness of a relinquishment affidavit is challenged on appeal, the reviewing court will sustain the point only if the fact finder could not have reasonably found by clear and convincing evidence that the affidavit was knowingly and voluntarily executed. *Neal*, 814 S.W.2 at 222; *see Interest of L.M.I.*, 119 S.W.3d 707, 715-16 (Tex. 2003) (Wainwright, J., concurring), *cert. denied*, 541 U.S. 1043 (2004); *id*. at 720-26 (Owen, J., concurring and dissenting, joined by Phillips, C.J., Hecht, J., and Jefferson, J.). We review the trial court's determination that the appeal is frivolous under an abuse of discretion standard. *De La Vega*, 974 S.W.2d at 154.

## DISCUSSION

Devin and Melissa contend that they presented a substantial question for appellate review, arguing the record does not contain clear and convincing evidence they voluntarily signed the affidavits relinquishing their parental rights.

The testimony at the hearing on the motion for new trial established that at the end of the second day of the termination hearing, Devin and Melissa began to confer with their respective attorneys about voluntarily relinquishing their parental rights. They were advised to discuss it over night. The next morning Devin and Melissa further conferred with their attorneys and each other for

three hours. They then executed the affidavits and the affidavits were tendered to the court.[1] Melissa testified during the termination hearing that she decided to execute the affidavit relinquishing her parental rights after consulting her attorney; she did so voluntarily and of her own will; she was not coerced by any party; and she was not promised anything in exchange. In her statement to the court, Melissa expressed how difficult the decision to relinquish her rights to her children was but she decided to sign the affidavit because she wanted "the best for [her] kids."

At the hearing on the motion for new trial, Melissa presented evidence that she has an IQ of 63 and reads at a fifth grade level. She testified she did not read the affidavit because she would not have understood it. However, she also testified that before she signed the affidavit, her attorney reviewed it with her and explained that by signing it she was choosing to give up her rights to her children and she could not later change her mind. Melissa repeatedly testified she felt tremendous pressure to sign the affidavit. On examination, however, she testified the pressure she felt was because of the testimony she had heard regarding her fitness as a parent, Devin's abuse of the children, and her attorney's evaluation that they were losing the case. And, although she felt pressured to make a decision, nobody pressured her to sign the affidavit. She signed the affidavit because at the time, she felt it was the best decision.

When proving up his affidavit of relinquishment at the termination hearing, Devin testified he consulted with his attorney about the affidavit and reviewed it with him; he was executing the affidavit after considering the best interests of his children; he signed the affidavit freely and voluntarily; and he understood that by signing the affidavit he was forever giving up his right to his

---

[1] A reporter's record of the part of the termination hearing when the affidavits were proven was attached to the attorney ad litem's response to Devin and Melissa's motions for new trial. The trial court took judicial notice of the record at the hearing on the motions for new trial, and the parties referred to and read from it extensively.

children and could not change his mind later. However, at the hearing on the motion for new trial, Devin testified that notwithstanding his previous testimony, he really had not understood what he was signing. He presented evidence that he was in special education all through school and had recently been diagnosed with Asperger's Syndrome. Devin testified he did not read the affidavit before signing it and his attorney did not answer all of his questions about it. He asserted he did not understand "a hundred percent" when he signed the affidavit that he was giving up his rights to his children. Devin testified he signed the affidavit because he felt "pressure and duress."

Devin testified he felt the pressure of the opinions of the Department's caseworker and attorney and the attorney ad litem, but conceded none of them were present when he was deciding whether to sign the affidavit. He also testified he felt pressured to make a decision, although the trial judge had told him he could have all the time he needed to confer with his attorney and decide. As with Melissa, Devin testified the pressure he felt was the result of hearing the testimony of the removing caseworker, a CASA volunteer, a witness from Family Violence Prevention Services, and one of the family's therapists, all of whom questioned his fitness as a parent.

Devin's trial attorney testified Devin had the mental capacity to understand and appreciate the consequences of signing an affidavit of relinquishment. Counsel testified he explained to Devin there was a danger the trial court would terminate his rights on endangerment grounds and Devin understood the testimony at the termination hearing had not reflected favorably upon him. He testified he reviewed the entire affidavit with Devin, explained Devin's options to him, and explained that he did not have to sign the affidavit. Counsel testified Devin agonized over the decision, changing his mind several times. As well as discussing the matter with Melissa, Devin talked to a friend who had come to court, and spoke at length with his sister by telephone before making his decision. At the same time, Devin's mother and mother-in-law were encouraging him

not to sign the affidavit. After speaking with his sister, Devin signed the affidavit. Counsel testified there is no doubt in his mind Devin understood what he was signing. One of the Department's caseworkers also testified at the motion for new trial hearing that she had overheard Devin talking on his cell phone after the termination hearing, telling someone "I relinquished my rights. It was the hardest thing I've ever had to do."

Based on the evidence presented at the new trial hearing, including the record of the testimony proving the affidavits, we hold there was clear and convincing evidence that Devin and Melissa knowingly and voluntarily executed their affidavits relinquishing their children. As the sole judge of the credibility of the witnesses and the weight to give their testimony, the trial court resolved any conflicting evidence regarding Devin's understanding of the document against him. *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding that in bench trial, trial court is sole judge of credibility of the witnesses and weight to give their testimony). We further hold that, notwithstanding their testimony regarding the intense emotions and pressure they felt, Devin and Melissa raised no evidence of coercion, duress, fraud, or any other form of wrongdoing. *See Dallas County Community College Dist. v. Bolton*, 185 S.W.3d 868, 878-879 (Tex. 2005) (holding duress is "improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment"); *R.B.*, 225 S.W.3d at 806 (holding that fact appellants were under considerable pressure to make a decision and faced potential criminal charges or the removal of their unaffected children, did not mean affidavits of relinquishment were the result of duress or other wrongdoing); *In re N.P.T.*, 160 S.W.3d 677, 680-81 (Tex. App.—Dallas 2005, pet. denied) (holding affidavit was not involuntarily executed as a result of duress or coercion merely because appellant was under pressure to make a decision as part of plea bargain and after being advised by counsel

appellant felt his only choices were to sign or go to prison). Because there is no arguable basis in this record for contending the Department failed to meet its burden or that the affidavits of relinquishment were procured by coercion or duress, the trial court did not abuse its discretion in finding Devin and Melissa's appeals were frivolous. *See De La Vega*, 974 S.W.2d at154.

The trial court's order is affirmed.

Steven C. Hilbig, Justice